Amelia Regan is here for the appellant, David Anderson and John Monroe are here for the appellee. Ms. Regan, you may begin. Good morning, I'm here on behalf of the appellant, Gina Magwood. We respectfully request that this court reverse the district court's grant of summary judgment for three reasons. The first of which is that the district court erred in deciding that Ms. Magwood's FMLA claims should be dismissed because her delay in submitting her medical certification was fatal to both claims. The second is that the district court erred in finding that Ms. Magwood's ADA claims failed because the defendant didn't have sufficient notice of her disability, need for accommodation, and protected activity. And the third reason is that the district court erred in finding that Ms. Magwood failed to provide sufficient evidence of pretext. Time permitting, I will also address how the district court erred in applying federal common law instead of Georgia state law to strike Ms. Magwood's jury waiver. Can I, on the first issue, the FMLA issue, address this for me because this is the thing that I'm having difficulty with, is that the only certification that she had a doctor fill out was one that said there was nothing wrong with her and she could go to work. You know, I'm having difficulty getting over that hump. Can you address that? Absolutely. Ms. Magwood was in the process of completing the medical certification that would have supported her, quote, triggering event under the FMLA as is discussed in the Pareto case that this court decided. Yeah, but so when you say she's in the process, I guess that's what's confusing to me is the process ended with the doctor saying, there's nothing wrong with you, go to work. You know, if she had been fired without that note and without returning to work, I would sort of understand your argument, but it seems like the process was over and she got a doctor and the doctor said, you can go back to work, you don't need FMLA leave. Well, I think the first important thing to keep in mind here is that the district court actually agreed with Ms. Magwood and concluded in its review of that FMLA form that there was nothing about that form that supported the conclusion that the appellee advocates for, which is that she did not have a need for either FMLA leave or an accommodation under the ADA as a result of that form. The fact that the form states that she is able to perform her job does not necessarily mean that she isn't also deserving and needing of time off to seek medical treatment as well as an accommodation for that same purpose. It doesn't mean that she doesn't have a disability. Well, let me ask you, I mean, I guess as a sort of purely technical matter, I guess you're right about that, but is there anything in the record from an expert, from a doctor saying she needed FMLA leave for this time period that she was off? There is. Okay, what's in there? There is her medical records from three different medical providers that she was seeing during this period of time. But those are the medical providers that didn't provide the certification, though, right? Those are the people that she was seeing in the process of getting the certification completed. This is merely a matter of her rights being cut off before she had the opportunity to complete the certification. And that's what I'm trying to figure out because, like I said, this would be a completely different story from my perspective if, you know, if they had been like, well, you have six weeks to do this, and she had said, look, I can't do it, and then she had been fired, can't do it within that time period. But they gave her seemingly time after time after time, and then she did get a doctor to fill out a form, and what the doctor said is, you're ready to go back to work, you don't need leave. Well, I think what might be helpful, what might answer your question is to talk very briefly during this period of time. First and foremost, what we know is that Ms. Magwood, in a telephone conversation with the benefits personnel, Crystal Eichner for Racetrack, on September 13, 2018, expressed very specifically to her that she had a mental health issue, that she was being treated by a doctor for that mental health issue, and that she needed leave to continue with that treatment before she could return to work. In response to that, she was initially given the initial time period to submit a certification with her deadline being September 26. On September 26, Ms. Magwood realized that the primary doctor that she was being treated for her mental impairments with, who was a therapist, was not able to fill out her medical certification form. She learned that only through taking the diligent steps, good faith steps, to go and see her medical provider and discuss the forms. The FMLA, by law, excludes therapists as being providers that can fill out these medical certification forms. Racetrack knew that. They were aware that it was a mental impairment that she was receiving treatment for. They could have notified her that in advance, and it would have saved her some time not taking the steps to get that appointment with the therapist, have the therapist review it, and only at that point being informed, I, as the therapist, cannot fill out this form. When Ms. Magwood learned that, she immediately, on the same day, went back to Racetrack and said, I've been told my therapist can't complete this form. What are my options? At that point, Racetrack said to her, you need, meaning a requirement, you need to have a psychiatrist complete your form. Legally, that's not true. Legally, that is false information that misguided Ms. Magwood and caused further delay in having her certification filled out. She was being treated throughout this period of time, and as early as, or excuse me, as late as June of 2018, several months prior to this request, by a primary care physician who had not only diagnosed her mental impairments, but also had prescribed medication for the That primary care physician could have completed her certification. However, she was very specifically instructed by Racetrack personnel that she needed a psychiatrist who she had not been being treated by at that time. And so, following Racetrack's instructions to AT, she went and got a referral from her PCP, which is exactly what Racetrack told her to do, in writing in an email, had an That psychiatrist, on the very first occasion that he met with Ms. Magwood, informed her, I need to treat with you further. This is our first meeting. I need more visits with you before I can complete this form. Which I think is logical for any of us to understand, why someone would not be able to complete the detailed information required by an FMLA form after only one visit. And so, that delay and those very specific set of circumstances, which was not an enormous amount of delay. I want to be clear. The period of time at issue here is approximately one month. And but, what the FMLA tells us about that period of time is that that 15 day time limit does not apply when two situations are at issue. The first of which is that it is not practical for the employee under the circumstances to complete that time period, despite their own diligent good faith efforts to do so. Or when the employer offers more time. Both of those situations occurred here. The one thing you left out of your timeline, which again is the thing that is troubling me about this, is the psychiatrist that she saw didn't say, I need more time to treat you before I fill out the form. The psychiatrist said, I'm filling out a form that says you're cleared to go back to work. Right? No, no. That's not what happened. Oh, they didn't fill out the form that says you're cleared to go back to work? That's correct. Oh, how'd that form get filled out? The psychiatrist was not the doctor that filled out the form. It was her primary care physician. Oh, okay. That filled out the form. That's a very important distinction, however, because this primary care physician, again, who is someone who legally could have filled out the form, had Raystrock given her the proper instructions, she was available and actually had an appointment with during the first period of the extended timeline for her to fill out that certification. Thus, had Raystrock properly notified her of her reporting obligations as they're required to do under the FMLA and as can be construed under federal court decisions as an interference when they fail to do so, she would have had that form submitted by October 3rd at the latest. Let me ask you a different question. She requested three to four weeks of leave and she actually ended up taking, I think around six weeks. Did she request any other leave that she was denied? Yes. First, I'm going to give you two responses to that question. The first of which is that, yes, the total amount of time between her initial request and when she returned to work was about six weeks. However, more than a week and a half, nearly two weeks of that period of time, was the delay between her initial request and her supervisor forwarding her request to Human Resources. In that nearly two-week period, no one was processing her request, giving her the forms, asking her to fill out the certification. There's a two-week delay there where she was never even provided the certification documents. Okay, but is that a basis of your claim, that that was a denial of leave? Were there any other requests? Absolutely. The second request came at the point at which she received the instruction from her psychiatrist that they needed additional visits. She advised them very specifically, my psychiatrist needs to see me for a few more visits before completing and allowing me to submit the certification, thereby very specifically explaining my intention is to engage in these visits as requested by my psychiatrist and then submit the FMLA form. That is consistent with what the FMLA regulations allow an employer to do when an employee, such as Ms. Magwood, has extenuating circumstances and has not yet submitted a certification form. If we take a look specifically at Regulation 825.314, excuse me, 313, it states that if an employee, after the allotted period of time, hasn't been able to complete the certification form, the remedy of the employer is not to terminate and it isn't even to deny the leave. It's to deny the FMLA protections related to the leave and to do so only until the form is submitted. That language is very specific in that section, such that she was still entitled to more time under the circumstances as they understood them. Racetrack understood her to be experiencing extenuating circumstances. Their benefits personnel specifically stated repeatedly in both emails that are contemporaneous with these discussions as well as their testimony that they viewed these as extenuating circumstances and were allowing her more time to complete the forms. Something else that's important that goes to your question, Judge Brasser, is that the very fact that she was required to fill out that FMLA return to work form shows that Racetrack is viewing this period of leave as medically related and as subject to the FMLA. If, as Racetrack argues now, after the fact, in order to avoid liability, that there was would not have had a right under law to ask for a medical certification for her to return to work. It would have been an inappropriate inquiry into a medical condition if it was in fact viewed as not an accommodation request or not a request for leave. That's not the case here. The documents and the communications between the parties at issue show that that's not the case here. I'm going to give you another two minutes to address the waiver of her right to a jury trial in her employment contract. Thank you. I appreciate the opportunity to do that. Here Racetrack has argued because of a pre-employment contract that Ms. Magwood is denied her right to a jury trial. The enforceability of that contract, we believe, is governed by Georgia law, and Georgia law very specifically prohibits and invalidates such pre-controversy waivers as void and unenforceable in the state of Georgia. That law is consistent with the federal Supreme Court's repeated refrain that the right to a jury trial is fundamental and that it must be heavily scrutinized before a waiver and that there is a presumption against waiver. Let me ask you this though. So I mean usually when we're assessing the waiver of a federal constitutional right, we apply federal law to determine whether that was waived or not. So for example, someone consents to a search, right? Federal law tells you whether they consent to a search. Why wouldn't this be the same? Why wouldn't we apply federal law to determine whether this jury waiver was valid given that this is a federal claim and the trial is going to happen in federal court? That's because in this situation, the contract that Racetrack is attempting to enforce is invalidated under Georgia law and Georgia law governs the enforceability of a contract. Even more so in a situation where we're determining the enforceability of a statute. Yeah, I mean, I don't know that that really gets you there because, I mean, let's just say Georgia law said that there's never a jury trial when an employee sues an employer. I mean, we wouldn't look to Georgia law just because the contract was under Georgia law, would we? We wouldn't. In that situation, it actually would be counter to federal law if there were a Georgia law Well, I guess that's my point. At the end of the day, it seems like we should just be looking at federal law because state law really doesn't matter. State law matters in this situation because it is granting a right to the employees that are citizens of the state of Georgia that goes beyond what the federal law allows for. So the federal knowing and voluntary standard that you're referring to is the minimum. It is the baseline. It is the floor of what any employee within the confines of the United States is entitled to when evaluating their right to a jury trial. Georgia, as is its right under the Ninth and Tenth Amendments to the Federal Constitution, has created a greater right than it has allowed for other states. Yeah. Let's just say Georgia had a law that said there can be no waivers of jury trials, right? That the right to jury trial shall never be waived. Would that mean that a federal judge has to have jury trials in every case? It could. Okay. So that's interesting. So like you have a Georgia law that says no right to jury trial. I mean, everybody has a right to a jury trial, and then when people come into federal court on federal claims, they can't waive a federal right to a jury trial because of what Georgia law says? In that situation, it would be another example of a state creating a right that is greater than what the federal law allows for. Again, the standard that you're referring to under federal law is the baseline. It is the minimum. That is the federal knowing and voluntary standard. In a situation where a greater than minimum right is at issue, the law that provides that greater than minimum right has to be interpreted and applied in that situation. In this case, that law is the Georgia law that allows for a very specific minimal set of circumstances when a waiver can. Yeah. That just seems really odd to me to suggest that the state of Georgia could determine how federal courts proceed to handle their trials. It isn't that the state of Georgia is determining how a federal court is proceeding. The state of Georgia is determining the scope of an employee's right to a jury trial. In this situation, the right to a jury trial is a minimum, and Georgia is prescribing a greater than that minimum right. This isn't a situation where a federal court or judge is making the decision about whether there's a right to a jury trial or whether there's not. This is a situation governing when the parties can get together amongst themselves and make a decision about whether or not that federal court should hear it based on a bench trial or a jury trial. In this situation, Georgia, in their authority to do so and to create the greater rights for its employees, have decided that consistent with federal law and policy, preserving and presuming that a jury right should not be waived, have created even greater protections than what that federal knowing and voluntary standard should apply. If this court were to take that away from Georgia employees, it's violating the principles of federalism. It's violating the principles of the Ninth and Tenth Amendments that allow for states to go beyond the minimum rights that federal law provides for. It isn't putting a constraint in any way on federal courts or federal judges because federal courts and judges, outside of some agreement by the parties, aren't actually interpreting whether or not the right exists. There is an automatic right to a jury trial absent some situations such as this that brings that issue before the court specifically. All right. We have your argument, Ms. Reagan. Thank you. Mr. Anderson? Good morning, Your Honors. May it please the court. My name is David Anderson. I'll be addressing the FMLA and ADA issues in this case. My colleague, Mr. Monroe, will be addressing the jury waiver issue. Your Honors, this is a straightforward case. The plaintiff claims that because she was terminated, the company violated her rights under the FMLA by not granting her certain leave, discriminating against her on the basis of an alleged disability, failing to accommodate that disability, and lastly, retaliating under both statutes. There are four kind of critical issues that are presented by the underlying record which demonstrate why the court should affirm the grant to summary judgment. The first, as the panel has already gotten into a little bit, is that the plaintiff never certified her need for leave under the Family Medical Leave Act, and under this case, this and additional cases in this circuit, her interference and retaliation claims under that statute simply just fail. Secondly, the evidence below demonstrates that the person who made the decision to terminate Ms. Magwood's employment had no knowledge or perception at the time that the decision was made that she was suffering from a disability. Third, the decision to terminate the plaintiff was based on a legitimate, non-retaliatory, non-discriminatory business reason that significantly impacted just the need for Ms. Magwood's position in the first place, and none of the record evidence suggests that there was any pretext in this case whatsoever, and four, Ms. Magwood's accommodation claim in particular fails because she never requested any specific accommodation that RIT did not otherwise grant. With respect to the interference claim, as I mentioned at the outset, Cash v. Smith indicates that when an individual fails to provide medical certification that can be required under the Family Medical Leave Act, they have not taken leave that's protected by the act, and therefore interference and retaliation claims simply do not lie. I do think it's worth pointing out that the certification that I believe Judge Brasher was asking about earlier was not a certification that the court in Cash is concerned about. That was actually a fitness for duty certification. In other words, after you have requested FMLA leave, an employer is allowed and permitted by the regulations to request that a certification be provided by a health care provider to justify the need for leave. Separately, when an employee decides that they want to return from leave, the employer can also then require that an employee provide a fitness for duty certification, so that way the employer knows that when the employee returns to work, TRC is able to perform their duties. So do we have a case on point that explicitly requires either pre-return to work or post-termination certification to bring an FMLA claim? I am not aware of any specific case on point. I think the most applicable case at issue here is going to be Cash, which lays out the groundwork which the Eleventh Circuit set forth to explain that in order to take under the protections of the Family Medical Leave Act, in and of itself, a certification can be required, and if it is not provided... But it's clear that based on this record, she was in the midst of her certification process. I don't know if I would agree that she was in the midst of the certification process for this particular reason. Ms. Magwood was initially given a period of time to provide her certification to Racetrack. After she indicated to the benefits group that she was needing additional time, Racetrack granted her additional time. Not once, but twice. And then Ms. Magwood said, I'm coming back to work, and here's the certification, and that would end the inquiry at that point. In Cash, what happened was the person requested FMLA leave, the employer said, give us a certification that you have some need for leave, and the employee gave the employer a certification from a doctor that said she did not have need for leave. That is the basis of my questioning to opposing counsel, is the certification that the doctor gave that said, eventually, the only certification on the record is one where the doctor says you don't actually need FMLA leave, you're ready to come back to work. Is that the equivalent to what happened in Cash, or is that meaningfully different than what happened in Cash? I don't think there's any meaningful difference. The point that I wanted to, you know, address is that the certification paperwork, whichever certification is provided by the medical provider, in this case, does not suggest that any additional time to provide some other certification in this case, Your Honor. Well, did she not, though? I mean, I thought, just to, I mean, I thought that even though the doctor said you can return to work and you don't have to be out of work, that she was pursuing therapy with a psychiatrist, and the idea was that eventually that psychiatrist would refer back to whatever kind of, I mean, I don't know what exactly the mental condition was, but anxiety or mental breakdown or whatever it was, and eventually the psychiatrist would say, you know what, yeah, you did need to be absent from work for this period. Isn't, wasn't she doing that? Perhaps. The representation that was made by Ms. Magwood to Ray Streck was that she was seeing, undergoing treatment with a psychiatrist who wanted to see her, quote, a few more times before filling out the paperwork. Right. But, I mean, the objective was still to get the paperwork filled out, right? We assume so, that Ms. Magwood intended to get the paperwork filled out, but at the time that the decision by Ray Streck was made to eliminate Ms. Magwood's role, she had not availed herself of the protections of the Family Medical Leave Act because she had not certified a need for leave. She had been absent for seven weeks, and to be clear, when she first requested that leave from her supervisor, she said, I'm taking two to four weeks off for personal reasons. It wasn't until that supervisor, who immediately asked, when do you expect to return to work, and heard nothing from Ms. Magwood, he reached out to the human resources group to say, hey, look, we've got an employee who said she needs to be out for two to four weeks for personal reasons. We ought to probably reach out to her to make sure if she needs any support or anything that we get that taken care of. Ray Streck reaches out to Ms. Magwood, informs her of her rights under the Family Medical Leave Act, explains that she needs to provide a certification, provides the requisite regulatory time period to do so, grants two additional extensions, and then Ms. Magwood announces that she's going to return to work. In doing so, provides the certification that we've, the fitness for duty certification we've been talking about, where she says, I don't need any restrictions. And also, that certification itself never justified the need for leave. Is there anything in the record, I ask opposing counsel this, I'm not really sure I got a full understanding. Is there anything in the record that explains from an expert saying, this is the certification that she would have gotten. I'm a psychiatrist, I would have given her this certification because she had this mental condition. No, no. Okay. So she didn't get the actual certification done, we know that. And you're saying that there's no testimony by somebody saying, well, actually she was eligible for FMLA leave because she did have these mental conditions and they, you know, the standard FMLA leave is pretty high actually for a medical condition, it has to substantially interfere with your work. So is there anything in there where somebody said, yes, she had anxiety, it was this kind of anxiety, it met the standard for FMLA leave? No. The medical records that, there was no testimony in the case below from any medical expert period, or medical provider for that matter. The records that were introduced as part of the record at the summary judgment stage were records that were obtained after Ms. Magwood had been terminated. So those were records that involved her course of treatment while, you know, during the seven  There were records from the therapist. I think there may have been some records from the psychiatrist as well as her primary care physician. But nothing in the case below involved any testimony whatsoever of a medical expert about substantiating the need for leave under the Family Medical Leave Act. Okay. So the... Go ahead. No, go ahead, please. We said in Peretta v. Brookdale Senior Living Communities that employees are protected from the interference prior to the occurrence of a triggering event, right? We found a pre-eligible employee who requested FMLA maternity leave before she gave birth was protected from the interference prior to the occurrence of the triggering event due to the notice requirements of the statute. Why couldn't we extend the reasoning of Peretta to this case? Extending the reasoning of Peretta to this case would be inappropriate for a couple of reasons. First, in Peretta, the individual who asked for leave at the time that that request was made, she wasn't eligible, not because of the medical certification, she hadn't worked the requisite eligibility hours, the 1,250 hours that you have to work before you're even allowed to ask for the request. And what the court, I think the concern there was that employers would receive a request from someone before they were technically eligible because they either hadn't been employed for long enough or hadn't worked the requisite number of hours for eligibility and then take some active action to prevent them from even taking the next step to get certified for leave. What's different about this case is that Racetrack didn't do anything to prohibit Ms. Magwood from providing medical certification. It reached out. It provided the first extension. It provided the second extension. And then Ms. Magwood decided to come back to work. And I also think what's important for the court to consider here is that Racetrack did not terminate Ms. Magwood because she was on unprotected leave for seven weeks. It didn't say, Ms. Magwood, you failed to give us the medical certification and therefore you violated our attendance policy and therefore we're firing you. The reason for Ms. Magwood's termination was a position elimination having nothing to do either with the certification or with her requested leave. Is there any evidence in this record that her termination was a part of a reduction in force? No, sir. Okay. Ms. Magwood's role in this, excuse me, her position in this case was eliminated because the company at a board level had made a decision to eliminate her modeling program, which essentially was designed to go to older stores and to refurbish those. The United States Code says the right to reinstatement includes the right to be restored to an equivalent position with the equivalent employment benefits. Even if the, even if the employee's position has been replaced, how do you get around the United States Code? With respect to the Family Medical Leave Act, the code section in this case is 13, Ms. Magwood wasn't, she didn't take leave under the Family Medical Leave Act, so she's not protected by that statute because she never certified her need for leave. Had Ms. Magwood returned to certification, perhaps that, the case before the court would be different, but that's, those aren't the facts that we have underneath here. Ms. Magwood never certified her need for leave, therefore she did not take protected leave and therefore she is not entitled to reinstatement rights whatsoever. Thank you. All right. Thank you, Mr. Anderson. Mr. Monroe. May it please the Court, my name is John Monroe. I'm so important to this case that I get to argue an issue that I hope you don't reach, which is whether or not the jury waiver that Ms. Magwood executed knowingly and voluntarily at the time she began her employment at Racetrack is enforceable as to the claims that she brings under federal law in a federal court. The United States Supreme Court has addressed this issue in similar v. Conner and held that the right to a jury trial in federal courts is to be determined as a matter of federal law in diversity as well as other actions. This Court has followed similar in BACRAC v. Village Franchise Systems, Aponte v. Brown and Brown, and Ford v. Citizens Bank to apply federal law, which is a knowing and voluntary standard to enforce jury waivers as to both diversity claims as well as federal claims. The argument here raised by the plaintiff is whether the Georgia Constitution, the earlier provision in the Georgia Constitution which prohibits pre-suit or pre-dispute jury waivers applies to a claim in federal court under federal law. We say it does not. To make the argument on the other side, the one you need to respond to, I guess, is the Georgia state law question, right? Usually, if we wanted to ask, for example, whether a contract existed that had this jury waiver in it, wouldn't we ask that under Georgia state law? Why would it be different for the application of the jury waiver? The issue of whether a jury is available to a litigant in this case is driven, the only reason a jury is available to a litigant in this case is because the statutes at issue grant the right to a jury trial. That is the sole reason. And to hold that a Georgia provision somehow amends the Americans with Disabilities Act or the Family Mental Relief Act is contrary to the supremacy clause in the United States Constitution. I just don't know that that's responsive because it just seems so, so let's say that instead of arguing that the jury trial waiver was invalid because of Georgia law, they just argued that no contract existed. For example, there was not consideration or there was no meeting of the minds, wouldn't we apply Georgia law to determine that, to answer that question, even though it would also be dispositive of the jury trial issue? You would apply Georgia law to determine whether there was a meeting of the minds, whether she was defrauded, but none of those issues exist here. Here the sole question is whether a knowing and voluntary waiver of the right to jury trial is abrogated by virtue of the Georgia Constitution. There's no question but that she entered into a contract. She entered into a contract, but we also have a 1993 case, the United States versus Bushert, where we said that the court has to go beyond an examination of the text of the agreement itself. There has to be some further indication that there was an understanding of the full significance of the waiver. In this particular case that we have here, there isn't anything that's cited beyond the revision. The court just looked at the agreement and there was nothing other than looking at the text of the agreement itself, and so we said you got to do something more in the United States versus Bushert. In this case, the agreement itself is so clear and so plain that any contention that she or four-sentence waiver, it's entitled, a bolded title jury waiver, and it says simply I waive my right to a jury trial. This is not a complex document. She has not contended in this case that she didn't agree to it. The law in this circuit is that those who have the ability to read should, and if they read something, if they sign something, they are deemed to have read it and to have understood it. So I don't know that there's a lot more to say that I'm out of time if there are other questions. We have your argument. Thank you, Mr. Monroe. Ms. Reagan, you've reserved some time for rebuttal. I'd like to start by addressing the court's holding in Cash v. Smith, as we do not believe it's applicable in this circumstance. First and foremost, the appellee is advocating that the import or the holding in Cash is that if there is a failure to certify, then there are no protections against the right to avoid interference and retaliation, and that is simply not the holding of Cash. Cash does not state that. Cash is also factually distinctive because the certification that was at issue in Cash is the medical certification that would cover and provide notice of the triggering event for the FMLA, and in that situation, the plaintiff in Cash's doctor stated he did not have a triggering event, meaning that his medication was actively managing his medical conditions and he did not need leave. That is not applicable or comparable to what's happening in this situation. To address Judge Brasher, your question about the record, Ms. Mackwood's medical records are continuous business records of the three medical providers that she was seeing. They provide her treatment and diagnosis records from months prior to her request for medical leave all the way up through the period of time she was terminated. I guess the question I have, and maybe this is in those records somewhere, but you have to have a doctor at some point say not just that you have this condition, but that the condition makes it where you can't go to work. That's not exactly the phrase, but there's some legal phrase. The idea is that it has to actually interfere with your ability to go to work, right? It does, and the medical records do more than that. Okay. If these medical records were placed side by side by the FMLA certification form, it would actually provide even greater detail. But the reality of the situation here is that the fact that she was able to provide those records only underscores the reality that were she given an appropriate and sufficient amount of time, she would have, in fact, provided that medical... How long has she had so far? I mean, this litigation has been going on for a long time, and there's still no doctor in the record that said that she had a triggering event that meets the standard, right? Your question presumes that she was required to take some activity after she was terminated to go and get that medical certification, and I don't believe either the FMLA itself or any case law would make that requirement upon her. So this is what we said in CASH. We said, quote, CASH did not provide APCO, APCO is the employer, with the certification that her medical conditions met the statutory standard, and therefore, the medical leave that she did take was not under the auspices of the FMLA, end quote. And so on that basis, we affirmed the district court's summary judgment. So what is different? Let's just assume that's the holding of CASH, because it says it is. What's different about this case? There are several things that are different, first and foremost, and what you just read is not the same thing that the appellee is advocating that the court find here, which is also very important. The first major difference is that that holding in CASH was based upon a medical certification that specifically stated the employee is not in need of medical leave. I know, but though we said the problem was not that she got a certification that said she was actually not eligible for leave. We said the problem was that she didn't provide APCO with certification that her medical conditions met the statutory standard, and isn't that the same thing here? There's no certification that her medical conditions meet the statutory standard. There is no certification, but the very important difference is that Ms. Magwood was in the process of getting that certification, and she was precluded from doing so by racetrack, and she had the entitlement to additional time to do that, as opposed to the circumstance in CASH, where there was an actual certification completed and submitted that definitively stated this person does not have a triggering event or a qualifying condition under the FMLA. That's a very important distinction here as a result, and that holding is also the holding that is being advocated for under the language you read in CASH is at odds and completely inconsistent with this Court's holding in PARADA, which quite specifically states that the attempt to exercise the right is the point at which an employee's protections against interference and retaliation trigger, and we know for a fact that both of those triggering events occurred in Ms. Magwood's situation. Thank you for your time. All right. Thank you. Court is in recess until 9 o'clock tomorrow morning. All rise. The case is submitted.